UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

BRIAN DEWAYNE ALI, JR.,

          Defendant.

Case No. 2:16-cr-20667
District Judge Stephen J. Murphy, III
Magistrate Judge Mona K. Majzoub
On Referral: Magistrate Judge
Anthony P. Patti

_____/

**<u>REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION (ECF 80) TO REVOKE ORDER OF DETENTION (ECF 7)</u>**

I.    **RECOMMENDATION:**  The Court should **DENY** Defendant Brian

Dewayne Ali's motion (ECF 80) to revoke its November 15, 2016 consent order to

detain him pending trial. (ECF 7.)  In sum, the Court should order Defendant Ali's

continued detention pending trial, because he has failed to rebut the presumption in

favor of detention, and, alternatively, because the Government has shown:  (1) by a

preponderance of the evidence that no condition or combination of conditions of

release will reasonably assure his appearance; and, (2) by clear and convincing

evidence that no condition or combination of conditions of release will reasonably

assure the safety of the community.

II.    **REPORT:**

A.    **Procedural background**

Defendant Ali is charged in a July 16, 2019 first superseding indictment with

five counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951, one count of

bank robbery in violation of 18 U.S.C. § 2113(a), and six associated firearm counts

in violation of 18 U.S.C. § 924(c).  (ECF 71.)  Ali initially consented to detention.

(ECF 7.)  More recently, he has moved for revocation of the detention order and

release on bond.  (ECF 80.)  The Government has filed a brief in opposition to his

release.  (ECF 82.)

Although this case is assigned to District Judge Murphy and Magistrate Judge

Majzoub, Judge Murphy has referred the instant motion to me for a full detention

hearing and report and recommendation (ECF 85), as I entered the detention order in question.  On September 23, 2019, I held a bond revocation hearing, at which Defendant Ali, his attorney (Andrew Densemo), and Assistant United States Attorney (AUSA Robert A. Moran) appeared.  All counsel agreed on the record that there is a presumption in favor of detention in this case due to the nature of the charges and potential penalties (per the Government, well over 100 years of incarceration).  Following evidentiary proffers, oral argument and testimony from Mr. Ali's wife, Zanita Ali, I took the matter under advisement.

### B.    Factual background

Ali is a married man, approximately 35 years old.  He is a lifelong resident of this District.  He has no significant employment history and no significant assets, although his family is willing to put up a residence as collateral to secure his release.  He has no known ties outside of this state, and his mother has offered to employ him if released on bond.  He has tested negative for substance abuse since 2003.  He has been incarcerated for most of his adult life, with the exception of, at most, three years total.  He married Zanita Ali while he was in custody.

In 2003, while on probation from the Oakland County Circuit Court for felony uttering and publishing, he was charged in this District with bank robbery and fled from law enforcement in Michigan to Arizona, where he:  robbed or attempted to

rob a pawn shop, got shot in the face by the pawn shop owner, attempted a carjacking at a Mexican restaurant to get away, used an alias, and, ultimately, was sentenced to 10 years of incarceration by the Arizona state court.  In October 2015, following the August 2015 completion of his 2004 federal sentence, he was placed on supervised release for 36 months.  The instant offenses are alleged to have occurred within two-and-a-half months of his release from custody.

The Government's proffer of evidence indicates that, between December 30, 2015 and February 5, 2016, Ali committed 5 robberies of check cashing facilities, all in disguise (once while wearing women's clothing), all with firearms or simulated firearms, threatening death or harm to employees of those establishments, *e.g.*, threatening to use an explosive device and simulating use of one by placing an electronic device on the ground, starting to count down, and telling one employee, "I know where you live."  The evidence indicates that he returned to one of the check cashing stores a second time with the intent to rob it again, that he confessed to obtaining $105,000 in a bank robbery during this crime spree and to using a B-B gun to threaten an employee, and that only $35,000 of the proceeds were recovered in a storage facility.  The $70,000 difference leaves Ali with the financial means to flee. Multiple vehicles were used in connection with these crimes, including one belonging to his girlfriend.  Cell phone pings place Ali at four of the five check

cashing robberies and at the bank robbery, and video evidence provides further corroboration. No firearms or ammunition have been recovered.

Ali seeks release on bond at this time because his wife, who testified at the detention revocation hearing and suffers from Stage 2 Hodgkin's Lymphoma, needs his support. He argues that her health condition is a powerful incentive for him: not to flee, to stay out of trouble with the law, and to obey any bond conditions that might be set. The Government opposes release based on both danger and flight risk, pointing out that Ali has spent little time with his wife in the past, and, in any case, was unfaithful to her during his very short period of release.

## C.    Applicable standards and analysis

In general, "[t]he default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Pursuant to "the Bail Reform Act, 18 U.S.C. § 3142 . . . a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *Id.* (quoting 18 U.S.C. § 3142(e)). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *U.S. v. Hinton*, 113 Fed. Appx. 76,

77 (6th Cir. 2004) (citing *U.S. v. Cisneros*, 328 F.3d 610, 616 (10th Cir.2003));

*U.S. v. Ellison*, 2007 WL 106572, at *2 (E.D. Mich., Jan. 8, 2007).

However, because probable cause for each of the charges in this case has

been established through the grand jury's superseding indictment, there is a

presumption in favor of detention in this case. 18 U.S.C. § 3142(e)(3). *See United

States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) ("We affirm the District Court's

decision that the indictment in this case… is sufficient to establish probable cause

that Hazime committed one or more of the charged offenses."); *see also United

States v. King*, 849 F.2d 485, 487-488 (11th Cir. 1988) ("the government need not

make a showing of probable cause independent of the grand jury's indictment.")

In order to overcome this presumption, a defendant must produce evidence *both*

that he is not a flight risk *and* that he does not pose a danger to the community.  18

U.S.C. § 3142(e)(3); *see United States v. Daniels,* 772 F.2d 382, 383 (7th Cir.

1985).  In light of the factors set forth in 18 U.S.C. § 3142(g), all of which I have

considered here, I find that Ali has not introduced sufficient evidence as to both

danger and flight risk in order to rebut this presumption.  While he may have

produced evidence tending to show that his risk of flight is diminished through the

incentives of caring for his wife, preserving his mother's property, and obtaining

employment, he has not introduced evidence demonstrating that there is a

condition or combination of conditions that can reasonably protect the community

from the danger he poses.  Alternatively, I find that the Government has shown:
(1) by a preponderance of the evidence that no condition or combination of
conditions of release will reasonably assure his appearance; and, (2) by clear and
convincing evidence that no condition or combination of conditions of release will
reasonably assure the safety of the community.

### 1.    Nature and circumstances of the charges

The Court first considers the nature and circumstances of the charges against
Ali, including whether they involve certain enumerated offenses, including crimes
of violence, and whether they involve firearms.  18 U.S.C. §3142(g)(1).  Here they
do.  The nature and circumstances of the crimes for which probable cause has been
found by the grand jury are very serious.  They involve threats of violence and
justifiable fear experienced by the victims, and they show compulsiveness,
repetitive criminal behavior, use of disguises, intimidation and weapons, and a lack
of deterrence from prior punishments.  This factor favors detention.

### 2.    Weight of the evidence

The second factor the Court must consider is the weight of the evidence.  18
U.S.C. §3142(g)(2).  "This factor goes to the weight of the evidence of
dangerousness, not the weight of the evidence of the defendant's guilt."  *United
States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).  "'[T]he weight of the evidence

against the person,' is not relevant to whether probable cause has been established. By its terms, it deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community." *Hazime*, 762 F.2d at 37.  As the Ninth Circuit explained in *United States v. Gebro*, 948 F.2d 1118, 1121 (1991), "[o]f these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt."  Here, not only does Ali have a history of committing similar crimes whenever he is not incarcerated, but he also has a history of flight, use of aliases, disguises and of committing felonies while on supervised release.  I am not persuaded that his wife's illness would be sufficient incentive for him to remain in this District if released on bond, or that he could refrain from criminal conduct.  His lack of fidelity to her only underscores this point.  I am likewise not persuaded that he would refrain from jeopardizing his mother's home if the Court accepted it as security.  This factor favors detention.

### 3.    History and characteristics of Defendant Ali

The third factor the Court must consider is "the history and characteristics of the person" accused.  18 U.S.C. §3142(g)(3).  This factor also favors detention. Although Ali has family ties in the area and a supportive family, and although he has reported while on release and lacks a significant recent drug abuse history, his brief adult history outside of incarceration is replete with instances of very serious

and dangerous crimes committed while on supervised release, including robberies and violence. He has more incentive to flee now than he had in 2003, as he faces more charges and significantly more prison time if convicted. He now faces the potential of spending the rest of his life in prison.

### 4.   Danger posed by release

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by [Ali's] release." 18 U.S.C. §3142(g)(4). In the Court's view, Ali's history has shown that he employs himself in one way, namely, by robbing banks and stores and using threats of violence and/or weapons to accomplish both the crimes and flight from arrest. Even if he were not utilizing physical threats or violence, "danger to the community" under the Bail Reform Act is construed more broadly than mere concerns of potential physical violence. It also encompasses potential "pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992); *see also United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) ("The Bail Reform Act specifies neither the kinds of harm nor the particular factors to be considered in determining whether a defendant poses a danger to the community."); *King*, 849 F.2d at 487, n.2. Given his historical behavior, including his demonstrated propensity to rob banks and check cashing facilities, with or without threats or use of physical violence, I find that Ali's release on bond would pose a serious danger to the

9

community against which no condition or combination of conditions could reasonably protect.

### D.    Conclusion

For all the reasons explained above, the Court should **DENY** Defendant's motion (ECF 80) to revoke its November 15, 2016 consent order to detain Defendant pending trial (ECF 7) and order his continued detention.

## III.    PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: October 4, 2019          s/

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE